UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | |
| | : | |
| **DEAN PARSONS** | : | CA 02-3276 |
| | : | |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | Chapter 13 |
| | : | |
| **DEAN PARSONS,** | : | Bankruptcy Case No. 01-20543 |
| | : | |
| **Debtor** | : | |
| | : | |
| **DEAN PARSONS,** | : | |
| | : | |
| Plaintiff | : | Adversary Proceeding No. 01-2098 |
| | : | |
| v. | : | |
| | : | |
| **HUSKIE PORTFOLIO, LLC** | : | |
| **FREDERICK L. REIGLE,** | : | |
| **TRUSTEE** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM OF LAW OF HUSKIE PORTFOLIO, LLC
IN APPEAL FROM THE ORDER OF U.S. BANKRUPTCY
<u>JUDGE THOMAS M. TWARDOWSKI DATED APRIL 23, 2002</u>**

KLEHR,HARRISON,HARVEY,
BRANZBURG & ELLERS LLP
Francis M. Correll, Jr.
Anthony P. Tabasso
Julia H. McCartney
260 S. Broad Street
Philadelphia, PA 19102
(215)568.6060 Telephone
(215)568.6603 Facsimile
**Counsel for Appellant Huskie Portfolio , LLC**

PHIL1: 461102-2

## **TABLE OF CONTENTS**

**PAGE**

I.   Introduction..................................................................................……….4

II.  Statement of Issues Presented.................................................……….5

III. Jurisdictional Statement........................................................…………5

IV.  Standard of Review................................................................……….6

V.   Statement of Facts................................................................……….7

VI.  Argument
    A.  The Bankruptcy Court Committed Reversible Error
        in its Interpretation of the Parties' Forbearance Agreement
        Vis-a-Vis the Provisions of 11 U.S.C. § 1322(b)(5)................……….11

    B.  The Bankruptcy Court Committed Reversible Error by
        Interpreting the Appellant's Stipulation That Its "Judgment
        Was Modified by [the] Forbearance Agreement" as
        Requiring a Finding That the Terms of the Original Loan
        Documents and Judgment Were Changed......................................……….16

VII. Conclusion.........................................................................……19

PHIL1: 461102-2

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

|  | PAGE |
|---|---|
| American Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76 (3d Cir. 1999) | 6 |
| Century Glove Inc. v. First "American Bank of New York, 860 F.2d 94 (3d Cir. 1988) | 6 |
| In re Brown, 803 F.2d 120 (#d Cir. 1986) | 5 |
| In re Cook, 172 B.R. 292 (Bankr.W.D.Mo. 1994) | 15 |
| In re Crawford, 217 B.R. 558 (N.D.Ill. 1998) | 14 |
| In re Geiger, 260 B.R. 83 (Bankr.E.D.Pa. 2001) | 14 |
| In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995) | 13 |
| In re Krystal Cadillac Oldsmobile GMC Truck, Inc., 142 F.3d 631 (3d Cir. 1998) | 6 |
| In re Meyertech Corp., 831 F.2d 410 (#d Cir. 1987) | 6 |
| In re Rowe, 239 B.R. 44 (Bankr. D.N.J. 1999) | 14 |
| In re Simmons, 202 B.R. 198 (Bankr.D.N.J. 1996) | 14 |
| In re Taddeo, 685 F.2d 24 (2d Cir. 1982) | 12 |
| In re Townsville, 268 B.R. 95 (Bakr.E.D.Pa. 2001) | 14 |
| Parsons v. Huskie Portfolio, LLC, Adv. No. 01-2098 (Bankr. E.D.Pa. April 23, 2002) | 12 |
| Ruxton v. City of Philadelphia, 246 B.R. 508 (E.D.Pa. 2000) | 15 |
| Sapos v. Provident Institution of Savings, 967 F.2d 918 (3d Cir. 1992) | 12 |

### **FEDERAL STATUTES**

| | |
|---|---|
| 11 U.S.C. § 1322(b)(2) | 14 |
| 11 U.S.C. § 1322(b)(5) | 4,5,6,11,12,14 |
| 11 U.C.C. § 1322(c)(1) | 13,14 |
| 28 U.S.C. § 158(a) | 5 |

PHIL1: 461102-2

**I.      Introduction**

Huskie Portfolio, LLC, the defendant in the above-captioned adversary proceeding, hereby submits this Memorandum of Law in Support of its Appeal from the Order of Bankruptcy Judge Thomas M. Twardowski dated April 23, 2002 (the "April 23 Order") granting judgment on the Complaint in favor of the plaintiff, Dean Parsons, and sustaining the plaintiff's objection to the proof of claim filed by the defendant.

The Appellant had filed a timely proof of claim in the amount of $213,337.38 in the above-captioned bankruptcy case of Dean Parsons, which claim is fully secured by the debtor's real property located at 1428 Windsor Castle Road, Hamburg, Pennsylvania.

The debtor filed an objection to this proof of claim and a concomitant complaint to determine the validity and extent of the Appellant's lien. The bankruptcy judge decided, on April 23, 2002, that "11 U.S.C. §1322(b)(5) permits Debtor to cure his default under the parties' Forbearance Agreement and reinstate the Forbearance Agreement by paying the arrearage owed to Huskie under the Forbearance Agreement under his chapter 13 plan and resuming the regular payments owed to Huskie thereunder outside of the plan." See Record Designation No. 2, Order of April 23, 2002.

Judgment in favor of the debtor was inappropriate in this case. A debtor's statutory right to cure, pursuant to 11 U.S.C. §1322(b)(5), does not permit the instant debtor to reinstate a contractual agreement's provisions which had terminated pre-petition and to discharge a large portion of the secured creditor's claim. As a matter of law, the Appellant is entitled to a finding that he is owed a debt in the amount of $213,337.38 which is fully secured by real property owned by the debtor.

**II.     Statement of Issues Presented**

1. Did the Bankruptcy Court commit reversible error in its interpretation of the parties' Forbearance Agreement vis-à-vis the provisions of 11 U.S.C. §1322(b)(5)? It is respectfully submitted that the answer is: Yes, reversible error was committed.

2. Did the Bankruptcy Court commit reversible error in its interpretation of the Appellant's stipulation that its "judgment was modified by [the] forbearance agreement," specifically, by sub silencio and incorrectly holding that the forbearance agreement forever and irrevocably changed the terms of the original Loan Documents and the judgment entered against the debtor (which judgment was the impetus for the debtor's request for forbearance)? It is respectfully submitted that the answer is: Yes, reversible error was committed.

The Appellant will show that the answer to both questions is "Yes;" the Bankruptcy Court committed reversible error.

**III.    Jurisdictional Statement**

Pursuant to the provisions of 28 U.S.C. §158(a), this District Court is possessed of the jurisdiction to hear instant appeal, as this is an appeal of a final order of the Bankruptcy Court.

Courts are directed to take a "pragmatic view" of finality in the sphere of bankruptcy appeals. E.g., In re Brown, 803 F.2d 120, 122 (3d Cir. 1986). In determining finality, an appellate court must balance several factors, including

> the impact on the assets of the bankruptcy estate, the necessity for further fact-finding on remand, the preclusive effect of our decision on the merits on further litigation, and whether the interest of judicial economy would be furthered.

In re Meyertech Corp., 831 F.2d 410, 414 (3d Cir. 1987). The impact on the estate is the "[f]irst and most important" factor in considering finality. Century Glove, Inc. v. First American Bank of New York, 860 F.2d 94, 98 (3d Cir. 1988), quoting In re Meyertech Corp., 831 F.2d at 414. Further, [this] factor recognizes that issues central to the progress of the bankruptcy petition, those likely to affect the distribution of the debtor's assets, or the relationship among the creditors, should be resolved quickly. Delayed review in such central cases threatens to undo the entire petition, possibly wasting several years of bankruptcy proceedings. Century Glove, Inc., 860 F.2d at 98 (internal quotations omitted; emphasis added). There is no question but that the amount of the Appellant's secured claim and the extent of its lien on the debtor's real property will greatly impact the assets of the bankruptcy estate.

Thus, jurisdiction lies with this Honorable Court to hear and determine the issues currently raised on appeal.

**IV.    Standard of Review**

The Bankruptcy Court's Order entering judgment in favor of the debtor was a legal determination which is to be accorded a plenary, or de novo review. E.g., American Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999); In re Krystal Cadillac Oldsmobile GMC Truck, Inc., 142 F.3d 631, 635 (3d Cir. 1998). That is, the Court's entry of judgment was one which was decided purely by application of law (i.e., a determination of whether the parties contractual Forbearance Agreement and the provisions of Section 1322(b)(5) of the Bankruptcy Code (as well as determination of meaning of one of the Appellant's pre-trial stipulated facts) should be read and interpreted so as to allow the debtor a "cure" of only $20,000.00) and is to be granted plenary review. See id.

V.   **Statement of Facts**

The legal issues raised on appeal present a straightforward application of Pennsylvania state law contract principles and federal bankruptcy law.  The language of the parties' contractual Forbearance Agreement is also unambiguously straightforward.

The plaintiff in the action from which the instant appeal is taken is Dean Parsons, an individual who filed a voluntary petition in bankruptcy pursuant to chapter 13.  The Appellant (defendant below), Huskie Portfolio, had filed a proof of its secured claim against the debtor in the amount of $213,337.38.  See Record Designation No. 5 (Proof of Claim of Huskie Portfolio, dated April 12, 2001).

The Appellant's secured claim against the debtor arose as follows.

A judgment had been entered in Pennsylvania state court against the debtor in the amount of $484,887.06 on January 15, 1993.  The debtor entered into a Forbearance Agreement (the "Agreement") with the Appellant's predecessor in interest, CoreStates Bank, on July 3, 1997.[1]  See Record Designation No. 9 and Exhibit A attached thereto ("Brief of Huskie Portfolio, LLC in Opposition to Debtor's Objection to Proof of Claim").  A true and correct copy of the Forbearance Agreement is also appended to the instant Memorandum of Law for the convenience of the Court, and is labeled Exhibit "A."  This Forbearance Agreement explains the background of the confessed judgment which had been entered in the Court of Common Pleas of Berks County, Pennsylvania, at Term No. 418-93.  See Exhibit A, at p. 1 ¶ C.

The debtor had borrowed the sum of $440,000.00 from the lender/bank in June, 1988. This loan was evidenced by a Promissory Note, which was secured by certain real property

---

[1] See Forbearance Agreement at p. 15, ¶9.13: "This Agreement: (a) shall be binding upon the Bank and the Obligors and upon their respective successors and assigns; and (b) shall inure to the benefit of the Bank and the Obligors and their respective successors and assigns.…"

located at 214-218 South Jefferson Street, Allentown, Pennsylvania pursuant to a mortgage (later duly recorded) in the amount of $440,000.00.

The debtor defaulted on his Note and Mortgage by failing to make the monthly payments of principal and interest when due. Exhibit A, p. 1 ¶ C. The bank confessed judgment against the obligors[2], and executed that judgment and scheduled the mortgaged premises at 214-218 South Jefferson Street for a Sheriff's Sale to be held on July 25, 1997. Exhibit A, p. 1 at ¶ E.

The bank did not proceed with the scheduled sale of the debtor's residence, however. Instead, it entered into the Agreement sub judice, which states at p.1, ¶ H:

> Obligors have requested, and pursuant to the terms hereof the Bank has agreed to temporarily forbear from further exercising its rights and remedies under the Loan Documents, judgments, and applicable law to allow Obligors to secure an alternative source of financing and/or to negotiate the sale of the Mortgaged Premises.[3]

Id. (emphasis added). Thus, and at the debtor's request, the Agreement modified the bank's ability to immediately proceed to execute upon the debtor's residence. Instead of selling this residence at the scheduled Sheriff's Sale, the bank agreed to modify its rights by a "temporarily forbear[ance]" of those rights. Id. That is, in essence, the bank gave the debtor "another chance, or an opportunity to cure."

The "second chance" which the bank granted the debtor in this Agreement is identified at p. 3, ¶2.1. This provisions states in full as follows:

> Forbearance by bank. Pursuant to the terms hereof, the Bank shall forbear in the exercise of its rights and remedies under the Loan Documents, judgments, and applicable law until the earlier of (the "Forbearance Period"): (a) the occurrence of an Event of Default hereunder; or (b) the date on which the Obligors receive funding

---

[2] The original loan was extended to both Dean Parsons and Susan Parsons; the later judgment was entered into against both obligors. Both Dean Parsons and Susan Parsons entered into the Forbearance Agreement on July 3, 1997, but only Dean Parsons filed for bankruptcy relief in chapter 13.

[3] The Mortgaged Property, as defined in the Agreement, refers to the debtor's prior residence located at 214-218 South Jefferson Street in Allentown, Pennsylvania.

8

> from an alternate financing source or sell the Mortgaged Premises and <u>all amounts outstanding under the Loan Documents are repaid or otherwise satisfied in full</u>.

<u>Id</u>. (emphasis added). Thus, the Agreement envisioned payment in full, absent default, in order for that forebearance to continue. <u>The bank agreed to forbear from foreclosing upon its interest until either the debtor defaulted under the Agreement, or until all amounts outstanding under the Loan Documents were repaid (or otherwise satisfied in full)</u>.

The payments to be made pursuant to the Agreement are identified at p.4, ¶3.3. Notably, an Event of Default under the Agreement was to occur upon the failure of the debtor "to make <u>any</u> payment when due under the Loan Documents and this Agreement." Exhibit A, p.7, ¶7.1 (emphasis added). And, as the debtor stipulated in the joint pre-trial statement to the bankruptcy judge below, the debtor was indeed in default of this Agreement prior to filing this bankruptcy petition. The debtor had not made any payments due under the Agreement <u>for almost three years</u>. The debtor stipulated and agreed that:

> <u>Debtor is in default</u> of said agreement because <u>debtor has failed to make any pre-petition payments under the agreement</u> other than an initial payment in the amount of $500 in April of 1999.

<u>See</u> Record Designation No. 7, Joint Stipulation of Facts, dated December 17, 2002 (emphasis added).

The payments the debtor was required to make, but admittedly failed to make, were the payments due under the forebearance Agreement at ¶ 3.3(b). That paragraph provides in full as follows:

> 3.3   <u>Payments</u>.
>
> (a)   The Obligors shall pay to the Bank the net proceeds from the sale of the of the Mortgaged Premises, less usual and necessary closing costs to be approved by the Bank, on or before July 3, 1997.

9

    (b)    In addition to the net proceeds from the sale of the Mortgaged Premises, the Obligors shall pay the Bank the balance of the Note Debt, which provided that there is not an Event of Default hereunder, the Bank agrees to discount the sum of Twenty-Thousand and 00/100 Dollars ($20,000.00). The remaining balance of $20,000.00 shall be payable over a period of ten (10) years with interest accruing thereon at the applicable rate pursuant to the terms of the Modification Agreement, and shall be paid in monthly installments of principal and interest in the amount of $259.34, beginning of the 1st day of September, 1997. The outstanding principal, accrued and unpaid interest, and all other sums due and owing shall be due and payable in fully on August 30, 2007. The Obligors acknowledge, consent and agree, and the Loan Documents are hereby amended to reflect the repayment provisions of the balance of the Note Debt in Paragraph 3.3(b) above. <u>This Agreement is not and shall not be construed as a novation of the original Note</u>. <u>In the Event of a Default hereunder, all sums due and owing pursuant to the original terms and conditions of the Loan Documents and the Judgments shall be due and payable in full</u>.

(Emphasis added.)

    It is not alleged that there has ever been a default of the debtor's obligation to pay to the Appellant's predecessor in interest the proceeds from the sale of the Mortgaged Premises, pursuant to paragraph 3.3(a) of the Agreement. Instead, all that is currently at issue are the terms of paragraph 3.3(b) and the balance of paragraph 3.3, which provides that <u>"[I]n the Event of a Default hereunder, all sums due and owing pursuant to the original terms and conditions of the Loan Documents and the Judgments shall be due and payable in full."</u>

    When the debtor defaulted under this Agreement prior to his bankruptcy filing, <u>all</u> sums due and owing pursuant to the original loan documents (minus any payments made) became <u>immediately</u> due and payable. As Article VIII of the Agreement – "Remedies" – makes clear, an Event of Default is essentially a self-executing act: the lender was not required upon default to

initiate any further action, give any further notice, or otherwise forbear from further legal action for any period of time upon default for the benefit of the debtor. Indeed, the Agreement states, at p.9, ¶8.1:

> <u>Remedies in Loan Documents</u>. Upon the expiration of the Forbearance Period, the Bank's obligations hereunder shall terminate and the Bank shall have, in addition to the rights and remedies set forth herein, all of the rights and remedies set forth in any of the Loan Documents and under applicable law or at equity.

Thus, the debtor's Forbearance Agreement with Huskie Portfolio terminated pre-petition due to the debtor's failure to make the requisite monthly payments pursuant to that Agreement. The balance due from the debtor pursuant to the original Loan Documents became immediately due and owing pre-petition. The debtor owes Appellant the secured amount of $213,337.38, which amount constitutes the principal sum borrowed ($440,000.00) minus payments made pursuant to the Agreement, ¶3.3 (presumably in large measure from the proceeds of sale of the Mortgaged Property, which was the debtor's prior residence).

## VI. <u>Argument</u>

    A.    The Bankruptcy Court Committed Reversible Error in its Interpretation of the Parties' Forbearance Agreement <u>Via-a Vis</u> the Provisions of 11 U.S.C. §1322(b)(5).

The Bankruptcy Court erroneously concluded that the debtor "may utilize section 1322(b)(5) to cure his default [by paying the sum of $20,000.00 over time] under the Forbearance Agreement and reinstate the Forbearance Agreement." Order of April 23, 2002, at n.1. <u>See</u> Record Designation No. 2. That section of the Bankruptcy Code provides:

> §1322 Contents of Plan….
>
> (b)    Subject to subsections (a) and (c) of this Section, the plan may …
>
> (5)    …provide for the curing of any default within a reasonable time and maintenance of payments while

11

> the case is pending on any unsecured claim or
> secured claim on which the last payment is due after
> the date on which the final payment under the plan
> is due;....

As this subsection allows a debtor attempting to reorganize his debts pursuant to a chapter 13 plan to "provide for the curing of any default within a reasonable time," the question here becomes: What, precisely, is the default that the instant debtor might be permitted to cure?

Here, the Bankruptcy Court mistakenly identified the default to which cure might be allowed as the default of payments up to the total sum of $20,000.00, pursuant to the Forbearance Agreement, ¶3.3(b). However, the default which might be cured by the debtor's use of section 1322(b)(5) is instead the default of payments on the balance due on the Loan Documents and the judgment entered against the debtor in state court.

Section 1322(b)(5) "was intended to permit the cure and de-acceleration of secured long-term residential debt accelerated prior to the filing of a Chapter 13 petition." In re Taddeo, 685 F.2d 24, 27 (2d Cir. 1982). See generally Sapos v. Provident Institution of Savings, 967 F.2d 918 (3d Cir. 1992). That is, and as noted by the bankruptcy court below:

> The power to cure must comprehend the power to 'de-accelerate.' This follows
> from the concept of 'curing a default.' A default is an event in the debtor-creditor
> relationship which triggers certain consequences -- here, acceleration. Curing a
> default commonly means taking care of the triggering event and returning to pre-
> default conditions. The consequences are thus nullified. this is the concept of
> cure used through the Bankruptcy Code.

Parsons v. Huskie Portfolio, LLC, Adv. No. 01-2098 (Bankr. E.D.Pa. April 23, 2002), p.2 n.1, quoting In re Taddeo, 685 F.2d at 26-27. Thus, it was incumbent upon the bankruptcy court to determine what default had occurred pre-petition. The lower court had to determine what event triggered certain consequences, and what consequences were therefore to be nullified. In re Taddeo.

Here, the pre-petition default was the debtor's failure to make his required monthly payment to the bank pursuant to the parties' Forbearance Agreement. Upon that default, or "triggering event," all of the secured claim became <u>immediately</u> due and owing. Also upon that default, the bank was once again entitled to list at a sheriff's sale forthwith the residential property serving as collateral for its loan. The debtor's ability to reduce the total secured amount owed pre-petition was lost, as was his ability to forestall a sheriff's sale. <u>Upon the filing of bankruptcy, the cure of these consequences (the ability to "nullify" the consequences of this default) would involve allowing the entire secured claim to be paid in a de-accelerated way, over time, and not immediately.</u>

A concomitant result the debtor obtained by filing a bankruptcy petition was the automatic stay of the appellant's state law right to immediately execute upon its judgment by having the real property listed for sheriff sale.[4] Similarly, this right was 'de-accelerated' upon the filing of bankruptcy, thereby giving the debtor a breathing spell and the opportunity to reorganize. And, since the real property has not yet been sold, the debtor retains his state law rights of curing his pre-petition default <u>via</u> de-acceleration of the total sums due, if such can be proposed in a confirmable chapter 13 plan of reorganization.[5] 11 U.S.C. § 1322(c)(1) ("a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law..."). <u>See generally</u>, <u>e.g.</u>, <u>In re</u>

---

[4] Indeed, Huskie Porfolio could have elected to seek and obtain relief from the automatic stay in the bankruptcy court in order to so execute upon the property, but elected instead to file a secured proof of claim and allow its secured lien to pass through the bankruptcy unaffected.

[5] The docket maintained by the Clerk of the Bankruptcy Court of the underlying chapter 13 case reveals that, despite having filed the instant case over seventeen months before, the debtor has nonetheless failed, to date, to have a proposed plan of reorganization confirmed by the bankruptcy court. <u>See</u> <u>In re Indian Palms Associates, Ltd.</u>, 61 F.3d 197 (3rd Cir. 1995) (courts may take judicial notice of the contents of their own dockets).

PHIL1: 461102-2

Crawford, 217 B.R. 558 (N.D.Ill. 1998); In re Townsville, 268 B.R. 95, (Bankr.E.D.Pa. 2001) (discussing legislative history of section 1322(c)(1) and its application); In re Rowe, 239 B.R. 44 (Bankr. D.N.J. 1999).  Accord In re Simmons, 202 B.R. 198 (Bankr.D.N.J. 1996).

A de-acceleration of a default in the bankruptcy context generally allows the debtor additional time than that otherwise allowed under applicable non-bankruptcy law, generally state law, to repay the secured debt, thereby affecting a "cure."  The cure appropriate in the instant case is to allow the debtor the opportunity to repay the full secured amount due, $213,337.38, over the life of his chapter 13 plan, if such payments are feasible.

Consistent with this approach is the language of section 1322(b)(2), which states that a chapter 13 plan of reorganization may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."  (Emphasis supplied.)  Thus, it is well-established that a secured creditor such as Huskie Portfolio may not have its rights modified by a chapter 13 plan.  E.g., In re Townsville.  The debtor's default vis-a-vis a secured creditor such as Huskie Portfolio may be cured, but the rights of the creditor may not be modified (a cure now being understood to not constitute a modification).

Here, however, the bankruptcy judge's opinion under review actually effected a discharge of a large portion of Huskie Portfolio's secured claim.  The court effectively discharged the secured sum of $193,337.38.  That is, the bankruptcy judge determined that the debtor need cure his default by paying only $20,000.00 of the total secured sum ($213,337.38).  This result is contrary to the overall scheme of the Bankruptcy Code's treatment of secured debt, which

generally allows such debt to pass through bankruptcy unaffected.  See, e.g., Ruxton v. City of Philadelphia, 246 B.R. 508 (E.D.Pa. 2000); In re Geiger, 260 B.R. 83 (Bankr.E.D.Pa. 2001).

It is respectfully suggested that the decision In re Cook, 172 B.R. 292 (Bankr. W.D.Mo. 1994), a decision relied upon by the bankruptcy court below, failed to reach a correct conclusion and, indeed, failed to reach its own logical conclusion.  The decision In re Cook, which was also relied upon by the debtor below, was cited by the lower court for the proposition that a debtor's right to cure a default attached to a pre-bankruptcy forbearance agreement similar to the one sub judice.  In In re Cook the Court recounted the factual background, one not dissimilar to the present situation, and analogized the debtor's position "to a pre-petition acceleration by a creditor which had not yet foreclosed at the time the bankruptcy was filed."  In re Cook, 172 B.R. at 293. After identifying the concept of a cure as a return to the pre-default status quo, that Court noted that the default in question in that situation was the failure to make a payment under the forbearance agreement.  That default, the Cook Court stated, was subject to cure not by payment in full under the agreement, but under the original note.  The Court specifically stated:

> Here, failure to make the December 1, 1993, payment triggered certain consequences, namely the reinstatement of the original note.  Such default is one which is subject to cure.

In re Cook , 172 B.R. at 293 (emphasis added).  Thus, the Cook Court found that reinstatement of the original note was the cure to which the debtor was entitled.  Similarly, in the instant case, the debtor's Forbearance Agreement with Huskie Portfolio terminated pre-petition due to the debtor's failure to make the requisite monthly payments pursuant to that Agreement. The balance due from the debtor pursuant to the original Loan Documents became immediately due and owing pre-petition.  The only remedy to which the debtor is now entitled, therefore, is to de-accelerate the sums due under the original loan, and the judgment and attempt to pay that

15

amount, $213,337.38, through his chapter 13 plan. The debtor owes Appellant the secured amount of $213,337.38, the amount due under the original loan.

> B. The Bankruptcy Court Committed Reversible Error by Interpreting the Appellant's Stipulation That Its "Judgment Was Modified by [the] Forbearance Agreement" as Requiring a Finding that the Terms of the Original Loan Documents Were Changed

The stipulation offered to the lower court was an acknowledgement that the terms of the original loan agreements were modified by the Forbearance Agreement. The bankruptcy judge found, however, that the Agreement did not merely modify the rights of the bank in its grant of forbearance to the debtor. Instead, the lower court appears to have determined that the parties' Forbearance Agreement, by modifying the loan terms and the judgment entered, actually reduced the amount due on the original loan irrevocably. This sub silentio finding is not supported by the language of the Agreement.

As noted above, after judgment was entered in favor of the bank and against the debtor, and after the bank listed the debtor's real property for sale at auction via sheriff's sale, the bank did not proceed with the scheduled sale of the debtor's residence. Instead, it entered into the Agreement sub judice, which states at p.1, ¶ H:

> Obligors have requested, and pursuant to the terms hereof the Bank has agreed to temporarily forbear from further exercising its rights and remedies under the Loan Documents, judgments, and applicable law to allow Obligors to secure an alternative source of financing and/or to negotiate the sale of the Mortgaged Premises.

Id. (emphasis added). Thus, and at the debtor's request, the Agreement allowed a temporary forbearance of the bank's ability to immediately proceed to execute upon the debtor's residence. That is, in essence, the bank gave the debtor another chance, or an opportunity to "cure."

The "second chance" which the bank granted the debtor in this Agreement is identified at p. 3, ¶2.1. This provisions states in full as follows:

16

> <u>Forbearance by bank</u>. Pursuant to the terms hereof, the Bank shall forbear in the exercise of its rights and remedies under the Loan Documents, judgments, and applicable law <u>until the earlier of</u> (the "Forbearance Period"): (a) the <u>occurrence of an Event of Default</u> hereunder; or (b) <u>the date on which</u> the Obligors receive funding from an alternate financing source or sell the Mortgaged Premises and <u>all amounts outstanding under the Loan Documents are repaid or otherwise satisfied in full</u>.

<u>Id</u>. (emphasis added). Thus, the Agreement envisioned timely payments, in their full monthly amounts, absent default, in order for that forbearance to continue. <u>The bank agreed to forbear from foreclosing upon its interest until either the debtor defaulted under the Agreement, or until the forbearance amount of $20,000.00 was paid in a timely fashion.</u>

The payments to be made pursuant to the Agreement are identified at p.4, ¶3.3. Notably, an Event of Default under the Agreement was to occur upon the failure of the debtor "to make <u>any</u> payment when due under the Loan Documents and this Agreement." Exhibit A, p.7, ¶7.1 (emphasis added). And, as the debtor stipulated in the joint pre-trial statement to the bankruptcy judge below, the debtor was indeed in default of this Agreement prior to filing this bankruptcy petition. The debtor stipulated and agreed that:

> <u>Debtor is in default</u> of said agreement because <u>debtor has failed to make any pre-petition payments under the agreement</u> other than an initial payment in the amount of $500 in April of 1999.

<u>See</u> Record Designation No. 7, Joint Stipulation of Facts, dated December 17, 2002 (emphasis added).

The payments the debtor was required to make, but admittedly failed to make, were the payments due under the Forbearance Agreement at ¶ 3.3(b). And, as also noted above, paragraph 3.3 provides that "in the Event of a Default hereunder, all sums due and owing pursuant to the original terms and conditions of the Loan Documents and the Judgments shall be due."

17

The stipulation of modification, then, cannot be read as broadly as the lower court appears to have read that statement. The fact that the bank allowed this debtor additional time to attempt to repay its secured debt is admittedly a modification of the parties' rights under the underlying loan documents. This grace of time is <u>not</u>, however, a modification that erases the existence of that secured debt. To the extent that the court below determined otherwise, it committed reversible error.

Thus, the only cure to which the instant debtor may avail himself pursuant to section 1322(b)(5) constitutes the offer to pay the entire secured amount owed the appellant, the sum of $213,337.38, over the life of his chapter 13 plan, if such a plan is later determined to be feasible.

**VII.    Conclusion**

For all the forgoing reasons, it is respectfully submitted that the April 23, 2002 opinion of the Honorable Judge Twardowski should be reversed, and that this Honorable Court enter an order denying the debtor's objection to Huskie Portfolio's secured proof of claim.  Further, it is respectfully submitted that this Honorable Court find that the debtor's use of section 1322(b)(5) of the Bankruptcy Code requires him to cure by proposing to pay the entire secured amount of $213,337.38 through his chapter 13 plan of reorganization.

Dated:

                                              KLEHR, HARRISON, HARVEY,
                                              BRANZBURG & ELLERS LLP

By:    _____
       Francis M. Correll, Jr.
       Anthony P. Tabasso
       Julia H. McCartney
       260 S. Broad Street
       Philadelphia, PA 19102
       (215)568.6060 Telephone
       (215)568.6603 Facsimile
       **Counsel for Appellant**
       **Huskie Portfolio , LLC**